## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:

| | |
|---|---|
| **CHUCK WILLIS** | **CASE NO. 17-00160-NPO** |
| **DEBTOR** | **CHAPTER 7** |

| | |
|---|---|
| **CHUCK WILLIS** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 17-00025-NPO** |
| **TOWER LOAN OF MISSISSIPPI, LLC, d/b/a** | |
| **TOWER LOAN OF CRYSTAL SPRINGS** | **DEFENDANT** |

### DEFENDANT TOWER LOAN'S MEMORANDUM IN SUPPORT OF
### MOTION TO DISMISS OR, ALTERNATIVELY,
### TO COMPEL ARBITRATION AND TO DISMISS OR TO STAY PENDING
### ARBITRATION

Debtor Chuck Willis signed an Installment Loan Agreement with Defendant Tower Loan of Mississippi, LLC d/b/a Tower Loan of Crystal Springs ("Tower Loan"). Debtor later filed a voluntary petition for Chapter 7 bankruptcy. Through his complaint in this adversary proceeding, Debtor seeks to assert claims for alleged violations of the Truth in Lending Act by Tower Loan with regard to the subject loan. Because the trustee has exclusive standing to pursue these claims, the Court should dismiss Debtor's claims under Federal Rule of Bankruptcy Procedure 7012, incorporating relevant portions of Federal Rule of Civil Procedure 12(b)(1) and (3).

To avoid any potential waiver of the right to arbitrate, however, Tower Loan also asserts in the alternative that the Court should compel arbitration regardless of whether the Debtor or the Trustee is the proper plaintiff. By signing the loan documents, Debtor agreed to arbitrate all claims against Tower Loan, and both Debtor and Trustee are bound by the terms of the incorporated Arbitration Agreement. That Arbitration Agreement delegates all threshold

{JX268196.2}                                    1

questions of arbitrability to the arbitrator. Under *Kubala v. Supreme Production Services, Inc.*, 830 F.3d 199 (5th Cir. 2016), and *Hudson v. Windows USA, LLC*, Civil Action No. 3:16-cv-596-DPJ-FKB, 2017 WL 1305251 (S.D. Miss. April 5, 2017), the only question for the Court is whether the parties agreed to arbitrate. As shown below, the written agreement to arbitrate is valid and binding, and this Court should compel arbitration and dismiss all claims against Tower Loan or stay those claims pending arbitration.

## PROCEDURAL HISTORY OF BANKRUPTCY AND ADVERSARY PROCEEDINGS

On January 17, 2017, Debtor filed a voluntary petition for Chapter 7 bankruptcy. In his accompanying Schedule D (Official Form 106D), Debtor indicated that he owed $6,000.00 to Tower Loan, secured by personal property. 17-00160-NPO, Dkt. [3] at 13.[1] Debtor did not indicate that the claim was disputed and indicated that he had no other contingent or unliquidated claims. *Id.* at 7, 13. Debtor indicated that he claimed the property securing the loan as exempt and that he intended to retain the property and avoid the lien. *Id.* at 31. On January 18, 2017, Debtor filed his motion to avoid Tower Loan's lien on his personal property. 17-00160-NPO, Dkt. [12]. The Court ultimately entered an agreed order granting in part and denying in part Debtor's motion to avoid, abandoning a riding lawnmower and two televisions from the bankruptcy estate and avoiding the lien as to other personal property. 17-00160-NPO, Dkt. [48] at 1.

On March 6, 2017, Debtor filed an amended Schedule A/B (Official Form 106 A/B), indicating that he had two contingent or unliquidated claims which were not previously disclosed: a claim against creditor Freedom Shield and a "potential truth in lending and fraud

---

[1] For citation purposes, Tower Loan identifies documents from the bankruptcy proceeding by noting the case number ("17-00160-NPO"), followed by the document's docket number and the page cited. All other citations citing a docket number refer to documents filed in this adversary proceeding.

{JX268196.2}                                    2

claim(s) against Tower Loan." 17-00160-NPO, Dkt. [47] at 7. On March 17, 2017, Trustee Stephen Smith filed a notice of change of status, indicating that he had "discovered assets which may result in a distribution to creditors of the estate." 17-00160-NPO, Dkt. [50].

On May 12, 2017, Debtor filed his complaint in the adversary proceeding against Tower Loan, asserting claims regarding purported violations of the Truth in Lending Act. 17-00160-NPO, Dkt. [55] at 4-5; [1] at 4-5.

## FACTS

On November 8, 2016, Debtor Chuck Willis entered into an Installment Loan Agreement ("Loan Agreement") with Tower Loan, borrowing $4,481.98. Ex. A at 1. The Loan Agreement states, in bold, capital print, the following:

> ARBITRATION AGREEMENT: BY SIGNING BELOW AND OBTAINING THIS LOAN, BORROWER AGREES TO THE ARBITRATION AGREEMENT ON THE ADDITIONAL PAGES OF THIS AGREEMENT. YOU SHOULD READ IT CAREFULLY BEFORE YOU SIGN BELOW.

*Id.* Debtor signed the Loan Agreement, thereby acknowledging the existence of the Arbitration Agreement with Tower Loan and specifically agreeing to be bound by its terms. *Id.*

The Arbitration Agreement consists of a single page and is distinctly titled "ARBITRATION AGREEMENT." *Id.* at 2. The Arbitration Agreement expressly states that the parties agree "that the Federal Arbitration Act applies to this transaction," and further states as follows:

> This arbitration agreement applies to all claims and disputes between Borrower and Lender. The Arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the Arbitration Agreement, or [] to the arbitrability of any claim or counterclaim.

*Id.* Under the terms of the Arbitration Agreement, Debtor agreed to arbitrate "all claims and disputes arising out of, in connection with, or relating to," *inter alia*, the subject loan, the validity of the arbitration agreement, all claims or disputes based on federal or state laws or regulations, and claims or disputes "involving or alleging breach of contract, fraud or misrepresentation (including fraud in the inducement), breach of fiduciary duty, breach of duty of good faith and/or fair dealing, negligence, torts, bad faith, and demands for punitive damages or attorney's fees." *Id.*

As discussed below, Debtor's claims should be dismissed for lack of standing.  In the alternative, Debtor and/or the Chapter 7 Trustee should be compelled to arbitration, and all claims against Tower Loan should be dismissed in this action or stayed pending arbitration.

## ARGUMENT

**A.**     **The adversary proceeding should be dismissed for lack of standing.**

Under 11 U.S.C. § 541(a)(1), property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  "The term 'all legal or equitable interests' has been broadly defined to include causes of action as bestowed by either federal or state law, in which the debtor has an interest, including other legal claims that could be prosecuted for the benefit of the estate."  *In re Phillips*, Bankruptcy No. 08-023250-NPO, Adversary No. 09-00033-NPO, 2009 WL 2835212, *4 (Bankr. S.D. Miss. Aug. 28, 2009) (citations omitted).  "[A]ll causes of action belonging to the debtor at the commencement of the bankruptcy case vest in the bankruptcy estate upon the filing of the bankruptcy petition."  *Id.* (citations omitted).  "Thus, a trustee, as the representative of the bankruptcy estate, is the real party in interest, and is the only party with standing to prosecute causes of action belonging to the estate once the bankruptcy petition has been filed."  *Kane v.*

*Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008). *See also Matter of Educators Group Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994) ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim."); *In re Phillips*, 2009 WL 2835212 at *4 ("In a chapter 7 case, the trustee has the exclusive capacity to assert or prosecute a cause of action belonging to the estate once the bankruptcy petition has been filed."). Property not administered and not abandoned by the trustee remains property of the estate, and property rights revert to the debtor only upon abandonment by the trustee pursuant to 11 U.S.C. § 554(a). *Kane*, 535 F.3d at 385.

Debtor's claims against Tower Loan arose out of the Loan Agreement he entered into on November 8, 2016. Ex. A at 1. When Debtor filed his voluntary petition for bankruptcy on January 17, 2017, those claims became property of the bankruptcy estate and Trustee Stephen Smith was vested with the exclusive standing to pursue the claims. Because Trustee has not abandoned the claims against Tower Loan, Trustee remains the only party with standing to pursue those claims. In fact, by filing his Notice of Change of Status, Trustee has indicated his intent that the newly-discovered assets – which presumably include Debtor's claims against Tower Loan that were discovered upon Debtor's submission of an amended Schedule A/B – remain property of the bankruptcy estate for possible distribution to creditors. *See* [50].

Debtor lacks standing to bring the instant claims against Tower Loan. Accordingly, the claims should be dismissed *in toto*.

**B.  Alternatively, the parties should be compelled to arbitrate any claims against Tower Loan.**

This Court has noted that "a trustee who stands in the debtor's shoes is bound by an arbitration clause to the same extent as the debtor." *In re Huffman*, 486 B.R. 343, 355 (Bankr. S.D. Miss. 2013) (citations omitted). Thus, if Debtor's claims against Tower Loan are not

dismissed for lack of standing, they should be compelled to arbitration whether pursued by Debtor or Trustee.

Ordinarily, in ruling on a motion to compel arbitration under Section 4 of the Federal Arbitration Act, a court considers two issues: (1) whether the parties formed an agreement to arbitrate; and (2) whether the parties' dispute falls within the arbitration agreement's scope. *Kubala*, 830 F.3d at 201 (citing *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)). If, however, the party seeking to compel arbitration points to a delegation clause in the arbitration agreement, then the court's analysis changes. *Id.* at 201. The questions then become (1) "whether the parties entered into a valid agreement to arbitrate *some* set of claims[;]" and (2) "whether that agreement actually does contain a delegation clause that requires that this claim go to arbitration for gateway rulings on threshold arbitrability issues." *Id.* at 202 (emphasis in original). Because Tower Loan points to a delegation clause in the Arbitration Agreement, this second set of questions applies here. *See Hudson*, 2017 WL 1305251 at *2 (finding that when a delegation clause is identified, the Court's analysis is limited to whether there is any agreement to arbitrate any set of claims).

**1.      Debtor and Tower Loan agreed to arbitrate.**

State contract law governs whether the parties formed a valid agreement to arbitrate. *Kubala*, 830 F.3d at 201 (citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012)). Under Mississippi law, "[a] valid contract must have (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Rotenberry v. Hooker*, 864 So. 2d 266, 20 (Miss. 2003) (citing *Lanier v. State*, 35 So. 2d 799, 802 (Miss. 1991)). Debtor's Arbitration Agreement satisfies each element.

The agreement to arbitrate is between two or more parties – Debtor Chuck Willis and Tower Loan.  It is supported by the consideration of mutual promises to arbitrate, as well as Tower Loan's extension of a loan to Debtor.  *See McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So. 2d 446, 452 (Miss. 2004) (holding that mutual promises constitute sufficient consideration even if perfect mutuality of obligation was absent in arbitration agreement).  The Arbitration Agreement is in writing, and its terms are clear, unambiguous, and definite.  *See Leach v. Tingle*, 586 So. 2d 799, 802 (Miss. 1991) (holding that a contract is sufficiently definite "if it contains matter which will enable the court under proper rules of construction to ascertain its terms.") (citing *Duke v. Whatley*, 580 So. 2d 1267, 1272-74 (Miss. 1991)).  Debtor is a legally competent adult, with the capacity to bring suit and the capacity to contract.  His signature on Tower Loan's Loan Agreement form constitutes evidence of their mutual assent.  *See Slater-Moore v. Goeldner*, 113 So. 3d 521, 526 (Miss. 2013) (finding mutual assent where defendant drafted a contract and plaintiff signed the contract).  Finally, "Mississippi follows the federal policy favoring arbitration" and has no prohibitions on arbitrating consumer finance agreements. *Citibank, N.A. v. Stovall*, 211 So. 3d 700, 701 (Miss. 2016).  In short, Debtor and Tower Loan formed a valid contract to arbitrate.

"The party resisting arbitration has the burden of demonstrating why arbitration is not appropriate." *Anderson v. Virginia Coll., LLC*, No. 3:12CV503TSL-MTP, 2012 WL 4052198, at *2 (S.D. Miss. Sept. 13, 2012) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 81 (2000)).  Tower Loan will not speculate as to what purported defenses to contract formation, if any, the Debtor may raise.  Regardless, as evidenced by his signature on the Loan Agreement, the Debtor  acknowledged the existence of the Arbitration Agreement and specifically agreed to be bound by the Arbitration Agreement's terms.

{JX268196.2}                                                                7

2.      **The Arbitration Agreement contains a delegation clause.**

The Arbitration Agreement contains a delegation of threshold issues of arbitrability to the arbitrator.  The Arbitration Agreement expressly states, "Borrower and Lender agree that they shall arbitrate all disputes between them on the following terms: . . . [w]hether the claim or dispute must be arbitrated; [and t]he validity of this arbitration agreement."  Ex. A at 2.

As noted by Judge Jordan in *Hudson*, a delegation provision in a valid arbitration agreement constitutes "'clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'"  *Hudson*, 2017 WL 130251 at \*2 (quoting *Petrofac, Inc., v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012)).  "[A] valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues."  *Kubala*, 830 F.3d at 202.  Accordingly, under *Kubala* and *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995), and just as Judge Jordan found in *Hudson*, the Court's analysis regarding the Arbitration Agreement ends at this step.

3.      **This Court has no discretion to refuse to enforce the arbitration provision in this non-core proceeding.**

"When determining whether a matter in bankruptcy must be submitted to arbitration, the court looks to the nature of the underlying proceeding."  *In re Daisytek, Inc.*, 323 B.R. 180, 186 (N.D. Tex. Apr. 11, 2005).  The Fifth Circuit has noted that "a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b). . . ."  *In re Gandy*, 299 F.3d 489, 495 (5th Cir. 2002) (citing *In re Nat'l Gypsum*, 118 F.3d 1056, 1067 (5th Cir. 1997)).  A "proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its

nature, could arise only in the context of a bankruptcy case." *In re U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002) (quoting *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).  In contrast, non-core proceeding is a matter that would exist outside of bankruptcy, but is "related to" a bankruptcy case.  28 U.S.C. § 1334(b).  In other words, "if the court determines that a proceeding does not derive exclusively from the [Bankruptcy] Code, the court has no choice but to abstain and allow the parties to arbitrate the matter." *In re Mirant Corp.*, 316 B.R. 234, 238 (Bankr. N.D. Tex. 2004) (citations omitted).

In his complaint, Debtor asserts that this action is a core proceeding under 28 U.S.C. § 157(b)(2)(C) and/or § 157(b)(2)(O).  Debtor's claims, however, are based solely on his allegation that Tower Loan violated the Truth in Lending Act by providing misleading and incorrect disclosures of credit terms.  [55] at 4-5.  As Debtor pleaded in his complaint, his claims derive exclusively from the Truth in Lending Act – "15 U.S.C. § 1600 *et seq.* and the accompanying Regulation Z" – and not the Bankruptcy Code.  *Id.* at 4.  Debtor's claims were not created by the Bankruptcy Code and the relief sought is available to him both outside of the bankruptcy proceedings and through arbitration.  *See Gandy*, 299 F.3d at 496; *see also In re Hydro Action*, 266 B.R. 638, 650 (Bankr. E.D. Tex. 2001).

Debtor's claims against Tower Loan are not a core proceeding, but are merely related to the bankruptcy case.  **Pursuant to Miss. Bankr. L.R. 7012-1, Tower does not consent to entry of final orders or judgment by the Bankruptcy Court.**  Under the Fifth Circuit framework crafted in *National Gypsum*, the Court lacks discretion to refuse to enforce the arbitration provisions.  Accordingly, the motion to compel arbitration should be granted.

**4.      Even if Debtor's claims are core proceedings, this Court should enforce the arbitration provisions.**

Assuming, *arguendo*, that Debtor's claims are a core proceeding, he still should be compelled to arbitrate his claims against Tower Loan. Even where claims are derived entirely from rights conferred by the Bankruptcy Code, the court retains "significant discretion" in order "to assess whether arbitration would be consistent with the purpose of the Code, 'including the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders.'" *Gandy*, 299 F.3d at 495 (quoting *Nat'l Gypsum*, 118 F.3d at 106). The court considers whether denying enforcement of the arbitration clause "would conflict with the purpose or provisions of the Code." *Id.*

Although this Court has refused to compel arbitration in other adversary proceedings, those cases were factually dissimilar from this case. In *In re Huffman*, this Court considered whether to compel arbitration of five claims, four of which were core proceedings based solely on the Bankruptcy Code. *In re Huffman*, 486 B.R. at 358-62. There, the Court noted that "arbitration more likely conflicts with the Bankruptcy Code, when the Bankruptcy Code itself created the rights in dispute." *Id.* at 362. In *In re Rivers*, this Court denied arbitration where a debtor sued a creditor "solely for violations of bankruptcy law." *In re Rivers*, Bankr. No. 03-05671-NPO, Adversary No. 10-00026-NPO, 2010 WL 5375950, *4 (Bankr. S.D. Miss. Dec. 22, 2010). The Court found that the claims should remain before it because they "would not exist outside of bankruptcy." *Id.* In *In re Russell*, the Court found that when faced with both core and non-core causes of action, arbitration should not be compelled where the causes of action derived entirely from rights conferred by the Bankruptcy Code and Rules predominate. *In re Russell*, 402 B.R. 188, 194 (Bankr. S.D. Miss. 2009). There, the Court found that arbitration "would inherently conflict with the underlying purposes of the Bankruptcy Code." *Id.* at 195.

In the case before the Court, however, the Truth in Lending Act created the rights asserted by Debtor, not the Bankruptcy Code. Those rights exist outside of bankruptcy, and compelling arbitration of Debtor's claims will not conflict with the purposes of the Code.

In a case similar to the one at bar, this Court considered whether to enforce arbitration of breach of contract claims brought in a state court and later removed to Bankruptcy Court. *In re: Katon, Inc.*, Case No. 08-02266-NPO, Dkt. No. 73 (Bankr. S.D. Miss. Nov. 13, 2008).[2] There, this Court found that the claims did not constitute a core proceeding but that even if they did, the Court would not "exercise its discretion to override the Arbitration Agreement" because the claims "arose outside of the Debtor's bankruptcy and are not based on any provision of the Bankruptcy Code" and because "[e]nforcement of the Arbitration Agreement would not jeopardize the objectives of the Bankruptcy Code." *Id.* at 9.

Just as this Court found in *Katon*, even if Debtor's claims constitute a core proceeding, compelling arbitration of the claims against Tower Loan presents no conflict with the purpose or provisions of the Bankruptcy Code. To the contrary, arbitration will likely lead to a swift, final result, resulting in more expeditious proceedings before this Court. Further, the claims alleged by Debtor are not rooted in bankruptcy law and do not relate to rights asserted by other creditors.

There is no reason to conclude that the Bankruptcy Court is a more appropriate forum than arbitration for Debtor's claims under the Truth in Lending Act. Accordingly, even if the claims are a core proceeding, which Tower Loan disputes, this Court should not exercise its discretion to refuse to enforce the arbitration provisions.

**C.      The Court should dismiss all claims against Tower Loan under Federal Rule of Civil Procedure 12(b)(1) or 12(b)(3).**

---

[2] Because this memorandum opinion and order is not reported, a copy is attached to the Motion as Exhibit B.

As explained *supra*, this action should be dismissed due to Debtor's lack of standing. Further, the Fifth Circuit has repeatedly held that dismissal is appropriate when there is an enforceable arbitration agreement. *Murchison Capital Partners, L.P. v. Nuance Communications, Inc.*, 625 F. App'x 617, 627 (5th Cir. 2015); *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010).[3] "'[M]any courts have taken the view that if a district court determines that the parties are bound by an arbitration agreement, the district court no longer has the authority to resolves arbitrable claims. These courts consider such a determination to be jurisdictional in nature and therefore find that Rule 12(b)(1) is an appropriate vehicle to bring a motion to compel arbitration and dismiss the action.'" Wright & Miller, 5B FED. PRAC. & PROC. CIV. § 1350 (3d ed.) (quoting *Johnson v. Orkin, LLC*, 928 F.Supp.2d 989, 998 (N.D. Ill. 2013) (citing *Omni Pinnacle, LLC v. ECC Operating Services, Inc.*, 255 F.App'x 24, 25 (5th Cir. 2007))). If the Court denies dismissal for lack of standing, the Court should compel arbitration and dismiss the claims or stay those claims pending arbitration.

**CONCLUSION**

As shown herein, the claims against Tower Loan brought by Debtor should be dismissed for lack of standing, as the cause of action belongs to the Chapter 7 Trustee. Alternatively, Debtor signed a Loan Agreement, agreeing to be and acknowledging that he is bound by the Arbitration Agreement, and the Arbitration Agreement delegates questions of arbitrability to the arbitrator. As the Fifth Circuit held in *Kubala* and in accordance with *National Gypsum*, the claims against Tower Loan should be sent to arbitration.

---

[3] The Fifth Circuit, however, has not definitively decided whether Rule 12(b)(1) or Rule 12(b)(3) is the proper rule for such motions to dismiss. *Noble Drilling*, 620 F.3d at 472 n.3 (dismissing case due to arbitration clause but declining to hold which rule applies).

Respectfully submitted, this the 6th day of July, 2017.

TOWER LOAN OF MISSISSIPPI, LLC

By Its Attorneys
JONES WALKER LLP

/s/Kaytie M. Pickett
Kaytie M. Pickett

Adam Stone (MSB No. 10412)
Kaytie M. Pickett (MSB No. 103202)
Jackie R. Bost, II (MSB No. 102909)
JONES WALKER LLP
190 E. Capitol St., Ste. 800 (39201)
P.O. Box 427
Jackson, MS  39205-0427
Telephone: (601)949-4900
Facsimile: (601)949-4804
astone@joneswalker.com
kpickett@joneswalker.com
jbost@joneswalker.com

{JX268196.2}                    13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day filed the foregoing document with the Clerk's office via the Court's ECF system which sent electronic notification of such filing to the following:

Stephen Smith
Trustee
Trustee1@smithcpafirm.com

John S. Simpson
Stacey Moore Buchanan
sbuchanan@simpsonlawfirm.net

Richard R. Grindstaff
Bryce C. Kunz
grindstaf@yahoo.com
brycekunzlaw@gmail.com

This, the 6th day of July, 2017.

 */s/ Kaytie M. Pickett*
Kaytie M. Pickett